Emma CRAFT, et al.

v.

**VANDERBILT UNIVERSITY, et al.**

**No. 3:94–0090.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 19, 1996.

Douglas S. Johnston, Jr., George Edward Barrett, Barrett, Johnston & Parsley, Nashville, TN, Richard M. Heimann, Donald C. Arbitblit, Robert J. Nelson, Lieff, Cabraser, Heimann & Bernstein, L.L.P., San Francisco, CA, Melvin M. Belli, San Francisco, CA, Jacqueline O. Kittrell, Knoxville, TN, for Emma Craft, Helen Hutchinson, Barbara Hutchinson.

A.H. Wilcox, Ellen K. Scott, John Shannon Bryant, William N. Ozier, Bass, Berry & Sims, Nashville, TN, James L. Cooper, Arnold & Porter, Washington, DC, for Vanderbilt University, Vanderbilt University Medical Center.

Kimberly Jennings Dean, Office of the Attorney General, Civil Rights and Claims Division, Nashville, TN, for Russell White, Fredia S. Wadley.

Robert C. Watson, Office of the United States Attorney, Nashville, TN, Richard Montague, Department of Justice, Torts Branch, Civil Division, Washington, DC, for Glenn T. Seaborg.

John Chambers, Kevin Sharp, Stokes & Bartholomew, Nashville, TN, James D. Miller, Matthew L. Bennett, Martin M. McNerney, King & Spalding, Washington, DC, for Nutrition Foundation, Inc.

John W. Wagster, Hollins, Wagster & Yarbrough, Nashville, TN, Philip R. Forlenza, Michael O. Finkelstein, Jeffrey Harris Blum, Patterson, Belknap, Webb & Tyler, New York City, for the Rockefeller Foundation.

Philip Norman Elbert, Aubrey B. Harwell, Neal & Harwell, Nashville, TN, for Monsanto Company.

JOHN T. NIXON, Chief Judge.

### MEMORANDUM

Pending before the Court are Motions to Decertify Plaintiffs' Class filed by Defendants Vanderbilt University (Doc. No. 253), Vanderbilt Medical Center (Doc. No. 253), Rockefeller Foundation (Doc. No. 253) filed on November 7, 1994, and Monsanto Company (Doc. No. 251), filed on November 7, 1994. Plaintiffs filed a Motion in Opposition to the Defendants' Motions to Decertify the Class on November 11, 1994 (Doc. No. 271).

Supplemental Memorandum were filed on this issue by Defendants Vanderbilt University and Vanderbilt University Medical Center (Doc. No. 400) on June 6, 1996, and by Monsanto Company (Doc. No. 408) on July 1, 1996. Plaintiffs filed a Supplemental Reply Memorandum regarding Class Certification on June 28, 1996 (Doc. No. 402). Defendant Rockefeller Foundation joined in the Supplemental Memorandum filed by Defendant Vanderbilt University and Vanderbilt University Medical Center, and filed a Reply to

the Plaintiff's Supplemental Reply Brief on July 1, 1996 (Doc. No. 405).

For the reasons stated below, the Court denies Defendants' Motion to Decertify Plaintiffs' Exposed Women and Exposed Children Classes, and grants Defendants' Motion to Decertify the Control Group Class. As the Court finds that it is more accurate to characterize medical monitoring as a remedial request for the exposed women and exposed children classes rather than a separate class, the Court grants Defendants' Motion to Decertify the Medical Monitoring Class and will treat medical monitoring as a requested remedy. Further, the Court will allow Plaintiffs 30 days to identify a class representative who received radioactive isotopes supplied by the Monsanto corporation. If Plaintiffs are unable to identify such a class representative, Monsanto will not be retained as a defendant to class litigation.

## I. BACKGROUND

Plaintiffs Emma Craft, individually, and on behalf of the next of kin of Carolyn Bucy; Helen Hutchinson; Barbara Hutchinson; and Richard E. Vaughn filed this action, as amended, on behalf of themselves and all similarly situated against the defendants. Plaintiffs allege that they were the unconsenting subjects of experiments involving radioactive iron isotopes conducted at Vanderbilt University from September 1945 through at least May 30, 1947 by the Tennessee Vanderbilt Nutrition Study. Plaintiffs, representing pregnant women who unknowingly ingested radioactive isotopes as part of the study, and the children they were carrying, seek damages against the Defendants. Plaintiffs allege multiple federal and state law claims against Defendants Vanderbilt University, Vanderbilt University Medical Center (VU and VUMC); the Rockefeller Foundation (RF); and the Monsanto Company (MC) (collectively, "Defendants"). Plaintiffs allege that they have sustained harms under 42 U.S.C. §§ 1983 and 1985, the *Bivens* doctrine, and various state tort theories.[1] Defendants have filed Motions to

Decertify the Plaintiffs' Class. In these proceedings the Court considers whether Plaintiffs have met the requisite standards of the Federal Rules of Civil Procedure at 23(a) and (b) regarding class certification and class maintenance.

Plaintiffs' claims arise out of an experimental project entitled the Tennessee Vanderbilt Nutrition Project ("TVNP") conducted jointly by the Vanderbilt defendants and the Tennessee Department of Health, at Vanderbilt's Prenatal Clinic from 1945 to 1949. In this project, according to Plaintiffs, pregnant women were given dosages of a radioactive isotope, Iron 59, without their knowledge or consent. The project was initially designed to study iron absorption in the uterus during pregnancy. The proposed Plaintiff class consists of 829 women who were all exposed to radioactive iron during this project, as well as the children born to those women. Plaintiffs also allege the existence of a control group class, consisting of 771 women who attended the Vanderbilt prenatal clinic between 1945 and 1949, as well as their children who were *in utero* at the time, who were contacted by Vanderbilt researchers in the 1960s for purposes of a follow-up study. The members of this proposed class do not know whether they were exposed to radioactive iron during the experiment because Vanderbilt has lost or destroyed the relevant records documenting their exposure or nonexposure.

In the 1960s, Vanderbilt physicians conducted the follow-up study of TVNP mentioned above, and in 1969 their results were published in the *American Journal of Epidemiology. See* Ruth M. Hagstrom, S.R. Glasser, A.B. Brill, and R.M. Heyssel, "Long Term Effects of Radioactive Iron Administered During Human Pregnancy," Doc. No. 243, Exhibit 1, attached thereto. This follow-up study found that there were four cancerous deaths of children born to the mothers who were exposed to radioactive iron, while there were no cancerous deaths in a control group of mothers who did not receive radio-

---

**1.** Plaintiffs assert state law claims for (1) medical malpractice; (2) battery; (3) negligence; (4) wrongful death; (5) fraudulent concealment; (6) negligent misrepresentation; (7) negligent inflic-

tion of emotional distress; (8) intentional or reckless infliction of emotional distress; (9) spoliation of evidence; and (10) invasion of privacy.

active iron. *Id.* at 00726. The study concluded that a likely causal relationship exists between the radioactive materials ingested by the women and the higher childhood cancer mortality level among exposed children. *Id.* at 00730 ("The discovery of three cases of malignancy [excluding the case of familial liver cancer], in the exposed group as opposed to none in the non-exposed group suggests a cause and effect relationship.")

Plaintiffs also allege that the Defendants Rockefeller Foundation and Monsanto Corporation funded and otherwise encouraged and sold the radioactive isotopes that were used in the TVNP.

Plaintiffs Craft and H. Hutchinson state that they ingested dosages of this radioactive iron during their pregnancies in 1946 while attending the Vanderbilt Prenatal Clinic. Craft alleges that her daughter, Carolyn Bucy, died of cancer at the age of eleven as a result of the radioactive iron that she absorbed during her mother's pregnancy and as a result of the TVNP's actions. Plaintiff B. Hutchinson is the daughter of H. Hutchinson and alleges that she has suffered from illnesses due to her mother's ingestion of the radioactive iron. Plaintiff Vaughn is the son of Margaret Vaughn who was also a participant in the project in 1946. Vaughn has been unable to determine whether his mother was a participant in the exposed or control group.

Plaintiffs assert that their class is comprised of four sub-classes: (1) all pregnant women who were exposed to the radioactive dosages of TVNP; (2) the children of those women who were so exposed; (3) the pregnant women and their children who participated in the TVNP as part of the control group; and (4) the "medical monitoring group" composed of all exposed women and children who are in need of medical monitoring due to their injuries caused from these exposures.

## II. DISCUSSION

■ The district court has broad discretion in determining whether an action should be certified as a class action, provided that discretion is exercised within the framework of Rule 23. *Sterling v. Velsicol Chemical*

*Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988) (citations omitted), *reh'g denied,* (1988); *In re American Medical Systems, Inc.,* 75 F.3d 1069 (6th Cir.1996).

For purposes of this motion, under the Federal Rules of Civil Procedure, the Court must re-examine whether Plaintiffs meet the prerequisites for class certification under Rule 23(a). If so, the Court will determine if the action is viable under the criteria of 23(b) or if it should be decertified.

### A. Prerequisites to a Class Action—Fed. R. Civ. P. 23(a)

According to Rule 23(a) of the Federal Rules of Civil Procedure, one or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

### 1. JOINDER OF ALL MEMBERS IS IMPRACTICABLE

■ Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The impracticability of joinder for class action purposes is not determined by employing a strict numerical test. *In re American Medical Systems, Inc.,* 75 F.3d at 1079. "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone." *Id.* (citation omitted).

Here, the class of exposed women consists of 892 women; the class of exposed children is almost as large; the control group class consists of 771 women and their children; and the medical monitoring class as proposed by Plaintiffs includes the members of both the exposed women and exposed children classes which would be well over 1,000 people. Moreover, it would be extremely difficult, if possible, to join all of these plaintiffs. Further, the Defendants do not contest that

Plaintiffs are so numerous that joinder is impracticable. Thus, the Court finds that each class meets the numerosity requirement.

### 2. COMMON QUESTIONS OF LAW AND FACT PREDOMINATE WITH REGARDS TO THE EXPOSED WOMEN'S AND EXPOSED CHILDREN'S CLASSES

■ This provision does not require that all the questions of law and fact raised by the action be common nor does it establish any test of commonality. 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1763 (1986).

"[W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *Sterling,* 855 F.2d at 1197. In *Sterling,* the Sixth Circuit affirmed class certification in a suit for personal injuries and property damage due to contamination of plaintiffs' wells by chemicals which escaped from defendants' toxic waste burial site. The Sixth Circuit noted the "increasingly insistent need for a more efficient method of disposing of a large number of lawsuits arising out of a single disaster or a single course of conduct." *Id.* Although recent Sixth Circuit case law has subjected class certification to more stringent scrutiny, *Sterling* continues to be cited with approval by the Sixth Circuit. *See In re American Medical Systems, Inc.,* 75 F.3d at 1084.

The court in *Sterling* stated that no matter how individualized the issue of damages might be, such issues may be reserved for individual treatment, with the question of defendants' liability tried as a class action. *Sterling,* 855 F.2d at 1197. Moreover, the Court found that in a case with a single disaster or single course of conduct, almost identical evidence would be required. *Id.* Finally, the *Sterling* court noted that class certification is appropriate to avoid "duplication of judicial effort" and to prevent "sepa-

rate actions from reaching inconsistent results with similar, if not identical, facts." *Id.*

■ In this case, common issues of law and fact predominate with respect to the classes of exposed women and of exposed children. These two proposed sub-classes of plaintiffs were a part of the same experimental project. All of them were exposed to the radioactive iron under the same experimental protocol, developed by the same research team. *See* "Flow Sheet for Nutrition Study of New White Patients Ob. Clinic—Starting Sept. 4, 1945," Doc. No. 243, Exhibit 3 attached thereto, p. 000536.

Common legal and factual issues exist as to whether Defendants' behavior violated the plaintiffs' rights to be free of state-sponsored invasion of a person's right to bodily integrity under the Fourteenth Amendment. *See In Re Cincinnati Radiation Litigation,* 874 F.Supp. 796, 810–814 (S.D.Ohio, 1995) (noting that even without a risk of irreversible health injury, due process may be violated by an absence of procedural safeguards, by government deception regarding medical experimentation, or by the existence of less severe means of achieving the state's purpose with the same effectiveness). Furthermore, despite a need for later investigation of damages, scientific and medical evidence as to the health risks and injuries of radiation to pregnant women and their children would be common to all class members. In fact, allowing the case to proceed as a class action with regards to the exposed women and exposed children sub-classes would allow Defendants to efficiently present evidence supporting their defense based on *In re: TMI Litigation Consolidated Proceedings,* 927 F.Supp. 834 (M.D.Pa.1996) (holding that an amount of radioactive substance comparable to that ingested and absorbed by some participants in the TVNP experiment was too low to be causally linked to subsequent illness or risk of illness).

In the case at bar, Defendants attack commonality by asserting that Plaintiff exposed women may have had varying information as to their drinking the liquid containing the radioactive iron tracer as a result of different doctors' practices. However, the deposition testimony of Dr. William Darby, who was one

of the designers of the TVNP portion involving radioactive isotopes indicates that TVNP staff "felt it was unnecessary" to inform women about the radioactive content of the drink they were given. *See* Darby Deposition, Doc. 243, Exhibit 60 attached thereto, p. 243–244. The term that the TVNP staff "*all* used at the time" to refer to the drink when speaking to the women receiving the radioactive isotope was "a cocktail," a phrase which Darby indicated was equivalent to "a sweet." *Id.* (emphasis added). These statements by Darby, when coupled with evidence indicating the TVNP's efforts to standardize experimental procedures, and with deposition testimony by the named plaintiff exposed women, all indicate that the exposed women were not informed as to their exposure to radioactive substances. *See* Craft Deposition and H. Hutchison Deposition, Doc. No. 243, Exhibits 58 and 59, attached thereto.

Finally, Defendants' contentions that plaintiffs received different dosages and claim different alleged injuries do not defeat the common issues of whether the Defendant's course of conduct violated Plaintiffs' bodily integrity. Further, additional common issues exist regarding whether it can be shown that Plaintiffs ingested sufficient amounts of radioactive material to enable reliable conclusions about causality and past illnesses, or reliable predictions about future illness.

■ The fact that some plaintiffs in the exposed women and exposed children classes are claiming actual past injury and some plaintiffs claim an elevated probability of future injury does not defeat commonality in the case at bar. Commonality for class action purposes can be maintained even if individual members sustain varying degrees of injury. *In re Telectronics Pacing Systems Inc.*, 164 F.R.D. 222, 227 (S.D.Ohio 1995), citing *Gerdom v. Continental Airlines, Inc.*, 648 F.2d 1223, 1228 (9th Cir.1981) *cert. denied*, 460 U.S. 1074, 103 S.Ct. 1534, 75 L.Ed.2d 954 (1983). Further, increased risk of cancer and other diseases, if demonstrated to a reasonable medical certainty, can be compensated, as can mental anguish based on a reasonable medical certainty of an increased risk of these afflictions. *Sterling*, 855 F.2d at 1205–1206.

■ With regards to the medical monitoring class, the Court finds that in the interest of simplicity and manageability, the medical monitoring class should be decertified, and medical monitoring should be treated as a form of requested relief for the exposed women and exposed children classes. As indicated above, the district court has broad discretion in determining whether an action should be certified as a class action, *Sterling v. Velsicol, supra* at 1197, and it is within district court discretion to modify or reformulate existing classes in the interest of manageability or other factors bearing upon class appropriateness. *See, e.g. Brummett v. Skyline Corp.*, 1984 WL 262559, * 4 (W.D.Ky. 1984) (modifying plaintiffs' proposed class to facilitate manageability).

■ Regarding the control group class, the Court finds that the class does not meet the requirement for commonality under Fed. R.Civ.P 23(a)(2). Unlike the exposed women and exposed children classes, which plaintiffs allege to have suffered a common violation of bodily integrity, the control group class, as formulated by plaintiffs, have not all experienced a fundamentally common harm. Some of the members of the control group class have actually experienced exposure to the radioactive isotope at issue, and some members did not experience exposure. Plaintiffs claim that the two groups are linked by their common lack of knowledge as to whether or not they were exposed, as a result of Vanderbilt University having "lost" the records which would allow for positive identification as to which members of this class actually belong in the exposed classes.

■ The Court finds that a more effective means of dealing with the group of persons who currently make up the control class would be to decertify the class and to rely upon the presumption articulated by *Welsh v. United States*, 844 F.2d 1239, 1249 (6th Cir. 1988). *Welsh* states that:

> The general rule is that the burden of proof lies where the pleadings place it, unless reasons of probability, policy, or fairness dictate otherwise.
>
> When, however, the customary approach would result in placing the burden upon a

party who is not in a better position to produce the required proof, the courts have not hesitated to allocate the burden to the opposing party.

That an adverse presumption may arise from the fact of missing evidence is a generally accepted principle of law ...

In the facts of this case, potential evidence was discarded by parties who were at least negligent ... in doing so. Judge Patel, in dealing with the destroyed VA radiation documents, correctly said that "where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court should draw the strongest allowable inferences in favor of the aggrieved party." *National Ass'n of Radiation Survivors [v. Turnage],* 115 F.R.D. [543] at 557 [(N.D.Cal.)]. The strength of the inference allowable obviously will vary according to the facts and evidentiary posture of a given case. Whether the defendant's actions may result or must result in an inference that the missing evidence would be unfavorable to the spoliator, or result merely in a burden-shifting presumption, will depend upon a case by case analysis. *Welsh* at 1245–1247 (citations omitted).

Thus, in the case at bar, the Court finds that the equitable solution to the situation created by Vanderbilt University's loss of the relevant records is to decertify the "control group" class and to allow a rebuttable presumption that members of the class previously designated the "control group class" were exposed to the radioactive isotope. Thus, if they so desire, former members of the control group class may opt in to the exposed women class or the exposed children class. Defendants, if they so desire, can offer evidence to rebut the presumption and to prove that these plaintiffs were actually not exposed to the radioactive isotope.

### 3. THE CLAIMS OF THE PROPOSED EXPOSED WOMEN AND EXPOSED CHILDREN CLASS REPRESENTATIVES ARE TYPICAL.

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. .... The typicality requirement may be satisfied even if there are factual distinctions between the named plaintiffs and those of other class members.

*In re Telectronics Pacing Systems, Inc.,* 168 F.R.D. 203, 213 (S.D.Ohio 1996), quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (citations omitted). To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law. *Senter v. General Motors Corp.,* 532 F.2d 511, 525 n. 31 (6th Cir.1976), *cert. denied* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). The Court cannot assume that plaintiffs' claims are typical of the class, but most "probe behind the pleadings" to determine if the typicality requirement is met. *In re American Medical Systems, Inc.,* 75 F.3d at 1082.

The representatives of the exposed women's class meet the Federal requirement for typicality. Helen Hutchison has received written confirmation from Vanderbilt that she was fed radioactive iron at the time her daughter, representative plaintiff Barbara Hutchison, was *in utero.* There is undisputed evidence indicating that Emma Craft was also exposed to radioactive iron. Craft attended the Vanderbilt prenatal clinic in 1946 and was subsequently contacted by Vanderbilt researchers as part of the follow-up study. Vanderbilt's 1969 follow-up study describes the death of an 11 year-old girl exposed to radioactive iron, whose gender, age, and medical history are identical to that of Carolyn Bucy, Emma Craft's daughter. The child described in the follow-up study suffered from the same rare form of cancer, located in the same limbs and organs, and following an identical course as that from which Carolyn Bucy suffered. Vanderbilt's follow-up study showed that, as of 1969, there had been four deaths of children whose mothers had been exposed to the radioactive

isotope and *no deaths among the control group children.* Thus, Craft and her daughter were undisputably among those exposed to the radioactive materials in the course of the experiment.

Helen Hutchison and Emma Craft testify to "typical" treatment under the experimental protocol outlined by Dr. Darby in his deposition and in TVNP documents. Both recall ingesting a drink in the course of their treatment at the Vanderbilt clinic and neither recalls being informed as to the real purpose or contents of the drink. *See* Craft Deposition, Doc. 243, Exhibit 58 attached thereto, p. 30 (Q: "What is it that you were told about the drink?" A: "It was vitamins.... They said it was good for me"); *See also* B. Hutchison Deposition, Doc. 243, Exhibit 59 attached thereto, p. 133 ("[O]ne time the doctor came in and gave me a cup and told me—something to drink.... And I asked him what it was and he said well, its just a little cocktail. ... [a]nd he said, 'Drink it, it will make you feel better.'"). Both were sent a "follow-up" letter in 1965, which requested further medical information, but which failed to indicate that Vanderbilt sought the information to ascertain whether the ingestion of the radioactive isotope had resulted in higher levels of cancer or other illnesses among experimental subjects. H. Hutchison Deposition, *supra*, at 139, 141. Thus, both Craft's and H. Hutchison's claims regarding invasion of bodily integrity, and increased risk or actual incidence of cancer and other illness stem from "the same event or practice or course of conduct that gives rise to the claims of other class members." *In re Telectronics Pacing Systems,* 168 F.R.D. at 213 (1996).

█ Defendants attack the typicality and the adequacy of the class representatives on the basis that Craft seeks monetary compensation for the death of Carolyn Bucy, while other plaintiffs seek *medical monitoring and* compensation for mental anguish arising from a heightened risk of cancer or other illnesses. However, there is Sixth Circuit precedent for medical monitoring claims and compensatory damage claims to proceed simultaneously on a class basis. *Day v. NLO, Inc.,* 144 F.R.D. 330, 334 (S.D.Ohio 1992).

After the Sixth Circuit denied a challenge to the *Day* class by mandamus, the district court proceeded to try the case under a trial structure that allowed the representative plaintiff to put on the class case for liability, medical monitoring, and punitive damages on behalf of the entire class; however, the Court required that at least one representative of the class receive compensatory damages as a prerequisite for proceeding to the individualized compensatory damages trial phase for absent class members. *Day v. NLO, Inc.,* 851 F.Supp. 869, 875–876 (S.D.Ohio 1994). Additionally, regardless of the proof on issues of actual damages arising from past illnesses or increased risk of future ailments, all exposed women and exposed children plaintiffs share a further common allegation—that of violation of bodily integrity.

### 4. THE PROPOSED CLASSES OFFER ADEQUATE OF REPRESENTATION

█ Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed. R.Civ.P. 23(a) "This prerequisite is essential to due process because a final judgment in a class action is binding on all class members." *In re American Medical Systems, Inc.,* 75 F.3d at 1083 (citing *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940)) (other citations omitted) (emphasis added).

█ The Sixth Circuit has indicated two criteria district courts must use to determine the adequacy of the representation: "1) the representative must have common interests with the unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter,* 532 F.2d at 525.

As indicated above in the section addressing typicality, the Court finds that the named Plaintiffs for the exposed women and exposed children classes have common interests with the unnamed members of the class. The claims of the class representatives and the unnamed class members both arise from a very similar, if not identical, course of conduct by Defendants. None of the ex-

posed women were ever informed of the type of experimental project in which they were involved—despite concern and uncertainty expressed by the scientific community at the time regarding the administration of radioactive material to humans. *See* Ernest Pollard and William L. Davidson, Excerpt from *Applied Nuclear Physics,* (1942), Doc. No. 243, Exhibit 4 attached thereto at p. 168 ("The exposure of an individual to radiation automatically renders him liable to suffer a mutation, and *there is no threshold to the radiation dose* which will produce such a change. It is just a gamble. There is thus no safe dose that can be prescribed . . . .") (emphasis in original). Moreover, none of these women, or their children, were ever notified of the results of the follow-up study. It is clear, therefore, that the class representatives share common interests with the remaining unnamed class members in attempting to prove that Defendant's conduct resulted in their damages. Additionally, the above analysis regarding the typicality of the named plaintiffs is also applicable in analyzing their adequacy, despite Defendants' challenges to purported differences in requested relief. As indicated in *American Medical Systems,* "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of other class members." *In re American Medical Systems, Inc.,* 75 F.3d at 1083.

The second criterion is also met. The qualifications of the Plaintiffs' counsel as set out in Affidavits indicate that they are qualified and experienced to conduct the proposed class action litigation. Plaintiffs' attorneys have previously handled complex class action cases.

Thus, the Court finds that the exposed women's class and the exposed children's class meet the fourth and final prerequisite. Therefore, the plaintiffs have met all of the requirements of Rule 23(a).

### B. Class Actions Maintainable—Fed. R. Civ. P. 23(b)

Even if the prerequisites of Rule 23(a) are met, the parties must also meet one of the three criteria listed in 23(b). A class action will be maintained only if it satisfies one of the criteria of Rule 23(b).

■ The Court finds that the exposed women and exposed children's classes meet the requirements of Rule 23(b)(2). Class certification is appropriate where defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole. Fed. R.Civ.P. 23(b)(2). In this case, the primary injunctive relief sought by these two groups of plaintiffs is in the form of medical monitoring for increased risks of illness/injury due to radiation exposure.

Several courts have found medical monitoring, if properly framed, can be a form of injunctive relief. *See Cook v. Rockwell Intern. Corp.,* 778 F.Supp. 512, 515 (D.Colo. 1991); *Werlein v. U.S.,* 746 F.Supp. 887, 895 (D.Minn.1990) *vacated on other grounds,* 793 F.Supp. 898 (D.Minn.1992); *Barth v. Firestone Tire and Rubber Co.,* 661 F.Supp. 193, 204–205 (N.D.Cal.1987). Sixth Circuit district court precedent has held that a medical monitoring program could constitute injunctive relief as required by Rule 23(b)(2). *Day v. NLO, Inc.,* 144 F.R.D. 330, 336 (S.D.Ohio 1992). In Lay, the district court approved a medical monitoring class for persons who alleged exposure to radiation at defendants' factory. *Id.* at 337. Furthermore, the Sixth Circuit subsequently denied defendant's attempt to reverse the district court's order by writ of mandamus. *See In re NLO, Inc.,* 5 F.3d 154, 159–60 (6th Cir.1993). Under a medical monitoring plan as outlined in *Day,* a court may establish an elaborate medical monitoring program of its own, managed by court-appointed, court-supervised trustees, pursuant to which a plaintiff is monitored by particular physicians and the medical data is utilized for group studies. *Day v. NLO, Inc.,* 144 F.R.D. at 336.

Given the legal authority supporting the notion that a medical monitoring program constitutes injunctive relief under Rule 23(b)(2), the Court concludes that the exposed women and exposed children classes, seeking medical monitoring as a form of re-

lief, should be certified pursuant to Rule 23(b)(2).

■ The Court finds that the exposed women class and the exposed children class also meet the requirements of Rule 23(b)(3). A Rule 23(b)(3) action is appropriate whenever the actual interests of the parties can be served best by settling their disputes in a single action. 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1777 (1986). Rule 23(b)(3) authorizes a class action when two requirements are met. First, the court must find that "the questions of law and fact common to the members of the class predominate over any questions affecting only individual members." Second, the court must find the class action to be "superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

First, the Court finds that common questions of fact and law predominate over any individual questions. The members of the exposed women class and the exposed children class were subjected to the same course of conduct at the same place by the same defendants. As indicated above, the exposed women were not informed of the real nature of the "cocktail" or "vitamin drink" they ingested at the behest of TVNP staff. Moreover, when the follow-up study was conducted, no one informed the plaintiffs of any of the possible risks or effects, or of the fact that data would be used for academic research into the harmful effect of the radiation ingested by women during pregnancy. Thus, common questions of fact exist. Furthermore, common questions of law such as liability and causation will also predominate over any questions of individual exposure and damages in this action.

Other courts have certified classes under Rule 23(b)(3) in similar situations. For example, a District Court in Texas certified a class of plaintiffs under Rule 23(b)(3) in a personal injury case arising from exposure to asbestos insulation products. *Jenkins v. Raymark Indus., Inc.,* 109 F.R.D. 269, 283–284 (D.C.Tex.1985), *aff'd,* 782 F.2d 468 (5th Cir.1986), *reh'g denied* 785 F.2d 1034 (5th Cir.1986). The court found that common

issues concerning a state of the art defense predominated over questions of individual exposure and damages. *Id.* Additionally, a District Court of the Western District of Tennessee certified a class of plaintiffs under Rule 23(b)(3) in a personal injury case arising from hazardous chemical leaking from a landfill into their drinking water and the Sixth Circuit affirmed that certification. *See Sterling,* 855 F.2d at 1197.

In this case there is no reason to force similarly situated plaintiffs go through repetitive separate trials trying common issues. To do so would merely waste valuable judicial time and resources, particularly given the extent of litigation and discovery which has taken place in the case before this Court to date.

Further, the Court finds that this case can be distinguished from cases cited by defendants in their recent supplemental briefs challenging class certification. This case not a faulty products case. *Compare Georgine v. Amchem Products, Inc.,* 83 F.3d 610 (3rd Cir.1996); *In re American Medical Systems, Inc.,* 75 F.3d at 1069. Neither is this a case involving the laws of several states or involving a series of differing models of the same purportedly hazardous device. *Compare Castano v. The American Tobacco Co.,* 84 F.3d 734 (5th Cir.1996) (holding that district court did not properly consider how variations in state law would impact upon viability of class certification); *In re American Medical Systems, Inc.,* 75 F.3d 1069 (holding that district judge improperly failed to consider how negligence law differed from jurisdiction to jurisdiction; and holding that general allegations of a defective product were insufficient against a manufacturer which had introduced ten different product models over the course of 22 years exhibiting no common cause of product malfunction).

Instead, the current case is one in which Defendants, held previously by this Court to be state actors, are charged with violating the bodily integrity of state residents, many of whom were vulnerable, less-educated, and financially constrained, by making them unconsenting experimental subjects. Regarding the violation of bodily integrity, there are no controversial issues of causation to be

determined, since the injury at issue took place at the point of the TVNP's administration of the potentially hazardous radioactive substance. Evidence presented thus far indicates Defendants' common course of conduct, given the TVNP's need for common experimental protocols. Common proof will be required to show that the protocols were followed, that the experiments were carried out as Plaintiffs allege, and to address Plaintiffs' allegations that, at the time, the scientific community viewed radioactive isotopes to be hazardous to humans, with results which were to some extent unknown.

### III. CONCLUSION:

For the reasons stated above, the Court finds that, with regards to Plaintiffs' exposed women and exposed children classes, a class action is superior to other methods for adjudicating this case. Thus, the Court DENIES Defendants' Motion to Decertify Plaintiffs' Exposed Women and Exposed Children classes, and GRANTS Defendants' Motion to Decertify the Control Group Class. As the Court finds that it is more accurate to characterize medical monitoring as a remedial request for the Exposed Women and Exposed Children classes rather than a separate class, the Court GRANTS Defendants' Motion to Decertify the Medical Monitoring Class and will treat medical monitoring as a requested remedy. Further, the Court will allow Plaintiffs 30 days to identify a class representative who received radioactive isotopes supplied by the Monsanto corporation. If Plaintiffs are unable to identify such a class representative, Monsanto will not be retained as a defendant to class litigation.