UNITED STATES OF AMERICA

v.

PHILIP MORRIS, INC., et al.

No. Civ.A. 99–2496(GK).

United States District Court,
District of Columbia.

July 1, 2002.

Sharon Y. Eubanks, U.S. Dep't of Justice, Washington, DC.

Jonathan M. Redgrave, Jones, Day, Reavis & Pogue, Washington, DC.

Richard A. Levie (Ret.), ADR Associates LLC, Washington, DC.

### MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff, the United States of America ("the Government") has brought suit against Joint Defendants,[1] pursuant to Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The Government seeks to enjoin Joint Defendants from engaging in fraudulent and other unlawful conduct and to order Joint Defendants to disgorge the proceeds of their past unlawful activity.[2]

This matter is now before the Court on Joint Defendants' Motion to Enforce Jury Demand [# 882]. Upon consideration of the motion, opposition, reply, the arguments presented at the motions hearing on May 31, 2002, and the entire record herein, for the reasons stated below, Joint Defendants' Motion to Enforce Jury Demand is denied.

### I. BACKGROUND

The Government alleges that Joint Defendants have violated Sections 1962(c) and (d) of RICO. Section 1962(c) prohibits participation in the conduct of an enterprise's affairs through a pattern of racketeering activity.[3] The racketeering activi-

---

1. Joint Defendants are Philip Morris Incorporated, R.J. Reynolds Tobacco Company. Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobacco Company), Lorillard Tobacco Company, Philip Morris Companies, Inc., British American Tobacco (Investments), Ltd., The Council for Tobacco Research–U.S.A., Inc., and the Tobacco Institute, Inc.

2. The Complaint originally contained four claims under three statutes. On September 28, 2000, the Court dismissed Count One

(pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651 *et seq.*) and Count Two (pursuant to the Medicare Secondary Payer provisions of the Social Security Act, 42 U.S.C. § 1395y(b)(2)(B)(ii) & (iii)). *See United States v. Philip Morris, et al.,* 116 F.Supp.2d 131 (D.D.C.2000).

3. Section 1962(c) provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect,

ty, or predicate acts, alleged in this case are mail and wire fraud. Section 1962(d) prohibits conspiracy to violate Section 1962(c).[4] The Government brings its claims pursuant to Section 1964(a) of RICO, which authorizes district courts to prevent and restrain violations of Section 1962.[5]

Joint Defendants have made timely requests for a jury trial in their Answers. The Government opposes those demands, contending that the Seventh Amendment does not confer a right to a jury trial for this RICO action. Joint Defendants now seek to enforce their jury demand. Accordingly, the present issue before the Court is whether this case shall be tried before a jury or by the Court.

## II. ANALYSIS

◼ It is well established that the Seventh Amendment preserves the right to a jury trial in "suits[ ] which the common law recognized among its old and settled proceedings, [and in] suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Parsons v. Bedford*, 28 U.S. 433, 447, 3 Pet. 433, 7 L.Ed. 732 (1830) (emphasis in original).

◼ The Supreme Court requires a two-step inquiry for determining when the right to a jury trial attaches. Accordingly, to determine whether a particular action will resolve legal, as opposed to equitable, rights the Court must (1) compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity, and (2) examine the remedy sought and determine whether it is legal or equitable in nature. *See Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 97, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). The Supreme Court has repeatedly asserted that the second part of this test is more important than the first. *See Teamsters v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) ("the second inquiry is more important in our analysis"); *Granfinanciera, S.A., v. Nordberg*, 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ("the second stage of this analysis is more important than the first"); *Crocker v. Piedmont Aviation, Inc.*, 311 U.S.App. D.C. 1, 49 F.3d 735, 745 (D.C.Cir.1995) ("the second part of this test (the nature of the remedy) is more important than the first").

Joint Defendants advance two arguments in support of their Seventh Amendment right to a jury trial. First, Joint Defendants contend that the Government's RICO claim sounds in common-law fraud and common-law conspiracy, which are actions at law. Second, Joint Defendants argue that, because the injunctive and eq-

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
18 U.S.C. § 1962(c).

4. Section 1962(d) makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id.* § 1962(d).

5. Section 1964(a) permits
    The district courts of the United States [to] have jurisdiction to prevent and restrain

violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.
    *Id.* § 1964(a).

uitable relief the Government seeks constitutes nothing more than monetary relief, that relief is legal in nature. For the reasons discussed below, both of these arguments fail.

### A. The Government's RICO Action Is Not Analogous to Common–Law Fraud or Common–Law Conspiracy and Therefore Is Not an Action at Law Entitling Joint Defendants to a Jury Trial

■ As noted above, the Government has brought suit against Joint Defendants for violations of Sections 1962(c) and (d) of RICO. There is no dispute that a cause of action under Sections 1962(c) and (d) of RICO did not exist in 18th century England. The Court must therefore "look for an analogous cause of action that existed in the 18th century to determine whether the nature of [the action] is legal or equitable." *Terry,* 494 U.S. at 566, 110 S.Ct. 1339.

Joint Defendants contend that the RICO cause of action is legal because the underlying theories of liability for the Section 1962(c) and (d) action–namely mail and wire fraud–sound in common-law fraud. Joint Defendants further contend that the Section 1962(d) claim is analogous to a cause of action for common-law conspiracy.

As the following analysis demonstrates, there are substantial differences between the statutory elements the Government must establish in this case and the elements for common-law fraud and conspiracy. Because of these differences, the Court rejects Joint Defendants' contention that the statutory claim under RICO is analogous to the common-law claims.

■ To establish a claim for common-law fraud, a plaintiff must prove at a minimum: first, action in reliance on a false representation; second, damages suffered as a result of that reliance; and third, successful completion of the scheme to defraud. *See Kitt v. Capital Concerts, Inc.,* 742 A.2d 856, 860–61 (D.C.1999); *United States v. Stewart,* 872 F.2d 957, 960 (10th Cir.1989).

None of these three elements of common-law fraud are required to be proven under RICO. Unlike common-law fraud, the mail and wire fraud statutes, whose violation constitute the predicate acts for the Government's RICO claim, do not require proof of reliance or damages or completion of the scheme to defraud. *See Neder v. United States,* 527 U.S. 1, 24–25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("common-law requirements of 'justifiable reliance' and 'damages,' for example, plainly have no place in the federal fraud statutes"); *Stewart,* 872 F.2d at 960 ("an offense under [the mail fraud statute], unlike common law fraud, does not require the successful completion of the scheme to defraud").

■ To establish a claim for common-law conspiracy, a plaintiff must prove, as with common-law fraud, that he suffered damages as a proximate cause of the wrongful conduct. *See Maltz v. Union Carbide Chemicals & Plastics Co., Inc.,* 992 F.Supp. 286, 309 (S.D.N.Y.1998). Because the Government has brought this claim pursuant to Section 1964(a), rather than Section 1964(c) of RICO,[6] it is not required to prove that it suffered any injury as a result of Joint Defendants' conduct. Neither is the Government required to sue for damages. *See United States v. Sasso,* 215 F.3d 283, 292 (2d Cir.2000) ("Section 1964(a) contains no requirement that the government show that it was injured").

---

**6.** Section 1964(c) creates a cause of action for "any person injured in his business or property by reason of a violation of section 1962 … and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c).

█ In response to this analysis, Joint Defendants rely heavily on *Neder*, 527 U.S. at 20–25, 119 S.Ct. 1827. While the Supreme Court did hold in Neder that the element of materiality is incorporated in the mail and wire fraud statutes, it also recognized that the "fraud statutes did not incorporate all the elements of common-law fraud." *Id.* at 24–25, 119 S.Ct. 1827 (emphasis in original). Moreover, the Supreme Court specifically pointed out that the common-law requirements of justifiable reliance and damages are not incorporated in the statutes. *Id.* Thus, rather than supporting the argument of Joint Defendants, Neder actually undercuts it.

The main case Joint Defendants cite with respect to common-law conspiracy is similarly unavailing. They rely on *Beck v. Prupis*, 529 U.S. 494, 500, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000), which held that the principles of common-law conspiracy are incorporated into Section 1962(d) of RICO. However, Beck's holding applied only to a claim brought pursuant to Section 1964(c), which provides treble damages for private individuals suing for tortious injury to their business or property.

The ruling makes no mention of and has no applicability to claims brought pursuant to Section 1964(a), which permits the Government to sue solely for equitable relief. In fact, the Supreme Court's reference to incorporation of the common-law principles was made with specific focus on the injury requirement of Section 1964(c)–a requirement that, as addressed above, does not apply to claims under Section 1964(a). *See id.* at 500, 120 S.Ct. 1608 ("To determine what it means to be 'injured … by reason of' a 'conspiracy,' we turn to the well-established common law of civil conspiracy.") (quoting 18 U.S.C. § 1964(c)).

In sum, three essential elements of the common-law claims for fraud and conspiracy are not required to prove the Government's RICO cause of action. Therefore, the Court concludes that the statutory causes of action under Sections 1962(c) and (d) are not analogous to claims for common-law tort or common-law conspiracy. Accordingly, the Court proceeds to the second, and more important, inquiry: the nature of the remedy the Government seeks. *See Terry*, 494 U.S. at 565, 110 S.Ct. 1339; *Crocker*, 49 F.3d at 745.[7]

---

7. Joint Defendants suggest that, contrary to Crocker, the Supreme Court has lessened its emphasis on the nature of the remedy. However, Crocker is the most recent D.C. Circuit case to address this issue, and clearly relied heavily on the second part of the inquiry. Moreover, the Supreme Court cases Joint Defendants cite are distinguishable. In those cases, it was not necessary to evaluate the nature of the remedy under the second prong because it was clear under the first prong of the Wooddell test that the cause of action was either tried at common law or was analogous to one that was. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708–18, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (suit under 42 U.S.C. § 1983 was a claim for legal relief sounding in tort); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 347–55, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (suit to recover statutory damages for copyright infringement carried right to jury trial because copyright suits for monetary damages were tried in courts of law before adoption of the Seventh Amendment). In this case, the Court has concluded that the causes of action under Sections 1962(c) and (d) of RICO were not tried at common law and are not closely analogous to claims for common-law tort or common-law conspiracy.

Indeed, Joint Defendants concede that courts have placed more emphasis on the nature of the remedy when, as in this case, " 'the search for the 18th-century English analog typically yields no clear answer.' " Mem. of Points and Authorities in Supp. of Joint Defs.' Mot. to Enforce Jury Demand at 5 n. 11 (quoting Crocker, 49 F.3d at 745) ("Joint Defs.' Mem").

### B. The Government Seeks Equitable Relief

The predominant relief sought by the Government is the disgorgement of Joint Defendants' profits, from 1954 to 2050, which are related to the alleged racketeering activity. The Government also seeks additional injunctive relief such as the establishment of several medical and treatment funds and funding for research and development of treatment and education programs. The Court concludes that the relief the Government seeks is equitable in nature.

#### 1. Disgorgement of Profits Is Equitable Relief

Joint Defendants contend that the Government's request for disgorgement of their profits is merely a prayer for monetary relief, and therefore the nature of the remedy sought by the Government must be deemed legal in nature.

■ It is true that monetary damages are traditionally considered legal relief. *See Terry*, 494 U.S. at 570, 110 S.Ct. 1339. However, the Supreme Court has articulated two exceptions to this general rule: monetary relief has been characterized as equitable where it is (1) restitutionary; or (2) incidental to or intertwined with injunctive relief. *See id.* at 570–71, 110 S.Ct. 1339; *Crocker* 49 F.3d at 746–47. Because the Court concludes that the disgorgement the Government seeks in this case is restitutionary, it need not address the second exception.

■ The D.C. Circuit has defined restitution as that body of law in which (1) substantive liability is based on defendant's unjust enrichment; (2) the measure of recovery is based on defendant's gain instead of plaintiff's loss; or (3) the court restores to plaintiff his lost property or its proceeds, in kind. *See Crocker*, 49 F.3d at 747.

■ As noted, the predominant relief sought by the Government is disgorgement of Joint Defendants' ill-gotten profits. Accordingly, the Government seeks to obtain Joint Defendants' proceeds from past and future cigarette sales. *See* Expert Report of Professor Franklin M. Fisher, Ph.d., Ex. A. (defining and calculating proceeds from cigarette sales). It is clear that this measure of recovery is based on Joint Defendants' gain–namely their profits–and not on Plaintiff's loss. Indeed, the Government has not, and need not, allege or prove that it suffered any pecuniary loss as a consequence of Joint Defendants' alleged racketeering activity. Accordingly, the disgorgement sought by the Government fits squarely within the second Crocker definition of restitution, and therefore must be deemed equitable in nature.[8]

---

**8.** Joint Defendants have raised only one argument to counter Plaintiff's claim that the disgorgement is restitutionary under *Crocker*. Joint Defendants contend that, as in *Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F.Supp. 334 (E.D.N.Y.1998), this is a case where there is a "significant overlap ... between the plaintiffs' loss and the defendants' gain ... [and] this factor cuts in favor of affording a jury trial." Joint Defs.' Mem. at 9 n. 19. The argument is unpersuasive for the following reasons.

First, as addressed above, there cannot be any overlap between Plaintiff's loss and Joint Defendants' gain in this case because the Government does not claim that it has suffered any loss. Second, the Ideal World ruling was predicated on factors that are applicable to trademark infringement actions. In those cases, there is an inherent overlap between disgorged profits and damages because, whether the plaintiff seeks profits or damages, he must prove actual injury. As already noted, in this case, the Government need not allege or prove, pursuant to Sections 1962(c) and (d) and Section 1964(a) of RICO, that it has suffered any injury or pecuniary loss.

Furthermore, an examination of both the RICO section under which the Government has brought its claim and the case law, underscores the equitable nature of the disgorgement in this case.

First, the Government has specifically brought this action pursuant to a provision of RICO that only permits equitable actions, namely Section 1964(a). Unlike Section 1964(c), which provides for monetary damages for injuries to business or property, Section 1964(a) authorizes civil suits in which only equitable relief may be granted. *See NSC Int'l Corp. v. Ryan*, 531 F.Supp. 362, 363 (N.D.Ill.1981) ("the statute strongly suggests that § 1964(c) provides for legal relief, since it follows § 1964(a), which authorizes only equitable relief. The juxtaposition of subsections (a) and (c) implies that Congress intended to create legal and equitable actions, putting each into a different subsection"). Accordingly, it is clear that the disgorgement remedy the Government seeks under Section 1964(a) is equitable in nature.

Second, the only court to squarely determine whether defendants have a Seventh Amendment right to a jury trial in a Section 1964(a) action brought by the Government to obtain disgorgement of the defendants' profits, held that such a right did not exist. *See United States v. Int'l Bhd. of Teamsters, et al.*, 708 F.Supp. 1388, 1407–08 (S.D.N.Y.1989).

Third and finally, civil suits to obtain disgorgement of profits or restitution have traditionally and repeatedly been characterized as equitable in nature. *See Feltner*, 523 U.S. at 352, 118 S.Ct. 1279 (recognizing "those actions for monetary relief that we have characterized as equitable, such as actions for disgorgement of improper profits"); *Terry*, 494 U.S. at 570, 110 S.Ct. 1339 ("we have characterized damages as equitable where they are restitutionary, such as in 'action[s] for disgorgement of improper profits' ") (quoting *Tull v. United States*, 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)); *Porter v. Warner Holding Co.*, 328 U.S. 395, 402, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (restitution of illegally obtained profits is "within the recognized power and within the highest tradition of a court of equity").

Accordingly, the Court concludes that the disgorgement the Government seeks constitutes equitable relief. As addressed below, the fact that the Government is the recipient of the disgorged profits, does not alter the Court's analysis.

### a. The Disgorged Profits Need Not Be Paid to the Cigarette Purchasers to Constitute Equitable Relief

The heart of Joint Defendants' argument is that the disgorgement sought by the Government is not restitutionary because it does not seek to return the disgorged profits to the victims, the defrauded cigarette purchasers.[9] However, Joint

---

9. To support this argument, Joint Defendants rely extensively on the Supreme Court's language in Tull that "restitution is limited to 'restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant.' " 481 U.S. at 424, 107 S.Ct. 1831 (quoting *Porter*, 328 U.S. at 402, 66 S.Ct. 1086). However, the Tull court did not specifically address the issue of whether restitution requires the return of the disgorged profits to the purchaser itself. Rather, the Supreme Court was merely distinguishing between the statutory imposition of a penalty (legal relief) and restitution (equitable relief).

481 U.S. at 422–24, 107 S.Ct. 1831. Thus, the holding in that case does not advance Joint Defendants' argument.

In fact, as already noted, the D.C. Circuit, writing after Tull, did not limit restitution to disgorgement that is returned to the purchaser. Instead, the Court of Appeals specifically held that restitution is measured by either defendant's gain or restoration of plaintiff's loss. *See Crocker*, 49 F.3d at 747. Here, it is clear that the disgorgement the Government seeks is measured by Joint Defendants' gain and therefore meets the *Crocker* definition of restitution.

Defendants have failed to cite any case in which any court has determined that disgorged profits are not restitutionary or equitable relief solely because the disgorged profits would be paid to the Government rather than to the purchaser or injured person. To the contrary, it is evident from the case law discussed below that any distinction between recipients of the disgorged profits is immaterial.

■ First, contrary to Joint Defendants' contention, the courts have ruled that disgorgement is an equitable remedy irrespective of whether the Government or the injured person is the recipient of the disgorged profits. *See FTC v. Gem Merchandising Corp.,* 87 F.3d 466, 470 (11th Cir.1996) (holding that disgorgement to the government of a wrongdoer's profits constitutes equitable relief because the purpose of disgorgement is not to compensate the victims but rather to deprive the wrongdoer of his ill-gotten gain); *SEC v. Blavin,* 760 F.2d 706, 713 (6th Cir.1985) (same).

■ Second, Joint Defendants' focus on the recipient of the disgorged profits conflates the equitable remedy of disgorgement with the legal remedy of damages. Unlike damages, the purpose of which is to compensate the victims of a defendant's unlawful conduct, the purpose of disgorgement is to deprive the wrongdoer of his ill-gotten gains. *See Porter,* 328 U.S. at 402, 66 S.Ct. 1086 (distinguishing restitution from damages and statutory penalties); *SEC v. Tome,* 833 F.2d 1086, 1096 (2d Cir.1987) (" 'primary purpose of disgorgement is not to compensate [victims]. Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched.... The district court possesses the equitable power to grant disgorgement without in-

quiring whether, or to what extent, identifiable parties have been damaged by [the] fraud.' Whether or not any [victims] may be entitled to money damages is immaterial") (internal citations omitted); *SEC v. First City Financial Corp., Ltd.,* 281 U.S.App. D.C. 410, 890 F.2d 1215, 1230 (D.C.Cir.1989) (same).

In view of the foregoing, the Court concludes that the disgorgement of Joint Defendants' profits is restitutionary, irrespective of the recipient of those profits. Therefore, the predominant relief the Government seeks is an equitable remedy.

### 2. Additional Injunctive Relief Is Equitable

In addition to disgorgement of profits, the Government also seeks other injunctive relief such as creation of a medical monitoring fund, an enforcement authority, and a public health authority; and the funding of research, smoking cessation, enforcement, and public education programs. *See* Joint Defs.' Mem. at 12–13.

Joint Defendants argue that, because this relief amounts to nothing more than a request for Joint Defendants to pay over money, this "ostensibly equitable relief can and should be regarded as 'Inherently legal' for Seventh Amendment purposes." Joint Defs.' Mem. at 12. The main case Joint Defendants cite in support of their position is inapposite. In *Barnes v. American Tobacco Co., Inc.,* 989 F.Supp. 661, 663–64 (E.D.Pa.1997), the case on which Joint Defendants rely, the court concluded under the first prong of Wooddell–contrary to this case–that the basis for the cause of action was analogous to a common-law negligence action for future medical expenses.[10]

---

10. Moreover, that court concluded that the Barnes plaintiffs had an adequate remedy at law, whereas in this case, Joint Defendants do not even suggest that the Government has any other remedy at law.

Indeed, numerous courts have found that remedies similar to that which the Government seeks in this case constitute equitable relief. *See, e.g., Katz v. Warner–Lambert Co.*, 9 F.Supp.2d 363, 364 (S.D.N.Y.1998) (claim for medical monitoring and research fund is injunctive in nature); *Arch v. American Tobacco Co.*, 175 F.R.D. 469, 483–84 (E.D.Pa.1997) (court-supervised medical monitoring fund differs from monetary damages and properly invokes the court's equitable powers); *Craft v. Vanderbilt University*, 174 F.R.D. 396, 406–07 (M.D.Tenn.1996) (medical monitoring program managed by court-appointed, court-supervised trustees is injunctive relief).

In summary, then, pursuant to the second, and "more important," Seventh Amendment inquiry, the Court concludes that the disgorgement of profits the Government seeks is restitutionary and therefore constitutes equitable relief. Further, the additional injunctive relief the Government seeks, including establishment of several medical and treatment funds and funding for research and development of treatment and education programs, is also equitable in nature.

## III. CONCLUSION

For the foregoing reasons, Joint Defendants' Motion to Enforce Jury Demand [# 882] is **denied**. An Order will issue with this Opinion.

### Order # 182

This matter comes before the Court on Joint Defendants' Motion to Enforce Jury Demand [# 882]. Upon consideration of the motion, opposition, reply, the arguments presented at the motions hearing, and the entire record herein, for the reasons discussed in the accompanying Memorandum Opinion, it is this 28th day of June 2002 hereby

**ORDERED**, that Joint Defendants' Motion to Enforce Jury Demand [# 882] is **denied**.