Slip Op. 06-104

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - x
CANADIAN LUMBER TRADE ALLIANCE  :
et al.,  :
    :
        Plaintiffs,  :
    :
        v.  :     Before: Pogue, Judge
    :     Consol. Ct. No. 05-00324
THE UNITED STATES et al.,  :
    :
    :
        Defendants.  :
- - - - - - - - - - - - - - - - - - x


    Steptoe & Johnson, LLP (Mark A. Moran, Matthew S. Yeo, and Michael T. Gershberg) for Plaintiff Canadian Lumber Trade Alliance;


    Steptoe & Johnson, LLP (Gregory S. McCue) for Plaintiff Norsk Hydro Canada, LLC;


    Steptoe & Johnson, LLP (Edward J. Krauland, Joel D. Kaufman, and Thomas R. Best)for Plaintiff Canadian Wheat Board;


    Sidley Austin LLP (Neil R. Ellis, Andrew W. Shoyer, Carter G. Phillips, Lawrence R. Walders, and Richard D. Bernstein) for Plaintiff Government of Canada;


    Baker & Hostetler, LLP (Elliot J. Feldman, John Burke, Michael S. Snarr, and Bryan J. Brown) for Plaintiffs Ontario Forest Industries Association, Ontario Lumber Manufacturers Association, and The Free Trade Lumber Council;


    Stuart E. Schiffer, Deputy Assistant Attorney General; David M. Cohen, Director, Jean E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Kenneth M. Dintzer, Senior Trial Counsel, and David S. Silverbrand, Trial Attorney) for Defendant United States;


    Dewey Ballantine LLP (Bradford L. Ward, Harry L. Clark, Linda A. Andros, Mayur R. Patel, and Rory F. Quirk) for Defendant-Intervenor Coalition for Fair Lumber Imports Executive Committee;


    King & Spalding, LLP (Joseph W. Dorn, Stephen A. Jones, and Jeffrey M. Telep)for Defendant-Intervenor US Magnesium LLC;


    Skadden Arps Slate Meagher & Flom, LLP (John J. Mangan, Jeffrey D. Gerrish, and Robert E. Lighthizer) for Defendant-

Intervenor United States Steel Corporation;

Collier, Shannon, Scott, PLLC (Michael R. Kershow, Mary T. Staley, Paul C. Rosenthal, and Robin H. Gilbert) for Defendant-Intervenors Neenah Foundry Company, Municipal Castings, Incorporated, LeBaron Foundry Incorporated, East Jordan Iron Works, Incorporated, Allegheny Ludlum Corporation, and AK Steel Corporation;

Pillsbury, Winthrop, Shaw, Pittman, LLP (Stephan E. Becker, Sanjay J. Mullick, and Joshua D. Fitzhugh) for Amicus Curiae Government of Mexico.

[Declaratory and injunctive relief granted; request for disgorgement denied. Judgment entered accordingly.]

**OPINION**

In Canadian Lumber Trade Alliance v. United States, 30 CIT ___, 425 F. Supp. 2d 1321 (2006) this court found that certain producers/exporters of goods from Canada to the United States, Plaintiffs in this proceeding, had standing and a cause of action to challenge the application of the Continued Dumping and Subsidy Offset Act of 2000 (commonly known, and referred to herein, as the "Byrd Amendment"), and that Plaintiffs' actions were not barred by the political question doctrine. The court further found that the Defendant Bureau of Customs and Border Protection ("Customs") was improperly applying the Byrd Amendment to goods from Canada and Mexico ("NAFTA parties") in violation of section 408 of the North American Free Trade Agreement Act ("NAFTA Implementation Act").[1] At the end of that decision, and in light of the court's holdings, the court ordered the parties to meet and confer with respect to

---

[1]Familiarity with the court's prior opinion is presumed.

the appropriate remedy/remedies; if the parties failed to agree on remedies, the court further ordered the parties to submit recommendations as to the appropriate remedy and scope of such remedy.

The parties have now reported to the court that they were unable to reach agreement on remedies and have accordingly submitted their recommendations.  Upon consideration of the parties' comments, and for the reasons set forth below, the court awards both declaratory and injunctive relief.


## DISCUSSION

The court's authority to grant relief is defined by 28 U.S.C. §§ 1585 and 2643.  Section 2643 states, in relevant part,

> Except as provided in paragraphs (2), (3), (4), and (5) of this subsection, the Court of International Trade may, in addition to the orders specified in subsections (a) and (b) of this section, order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition.

28 U.S.C. § 2643(c)(1).  The authority provided by Section 2643 complements 28 U.S.C. § 1585 which specifies that "[t]he Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."  The legislative history of these provisions supports a broad reading of the court's remedial authority.  See Borlem S.A.-Empreedimentos Industriais v. United States, 913 F.2d 933, 937

(Fed. Cir. 1990) ("[T]he legislative history of 28 U.S.C. § 1585 (1980) provides the Court of International Trade 'with all the necessary remedial powers in law and equity possessed by other federal courts established under Article III of the Constitution.'") (footnote omitted) (quoting Rhone Poulenc, Inc. v. United States, 880 F.2d 401, 402 (Fed. Cir. 1989) ); see also Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1312 (Fed. Cir. 2004); United States v. Hanover Ins. Co., 82 F.3d 1052, 1054 (Fed. Cir. 1996) ("Like district courts, the Court of International Trade has the inherent power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments." (citations omitted)).

Plaintiffs here have asked the court to use its authority to grant three types of relief: (1) a declaratory judgment; (2) a permanent injunction enjoining all future Byrd distributions collected on Plaintiffs' goods; and (3) disgorgement of prior past distributions. Defendant and Defendant-Intervenors contest this relief, albeit in varying degrees, and with sometimes similar and sometimes different concerns. The court will address in turn each aspect of the requested relief.

**(1) Declaratory Relief**

Pursuant to the Declaratory Judgment Act,

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of

the Internal Revenue Code of 1986 [26 U.S.C. § 7428], a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930 [19 U.S.C. § 1516a(f)(10)]),[2] as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, <u>whether or not further relief is or could be sought</u>. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).  <u>See also</u> USCIT R. 57; 28

U.S.C. § 2202.

The Supreme Court has explained that "[w]hile the courts

should not be reluctant" to grant relief in appropriate cases,

<u>Public Serv. Comm'n of Utah v. Wycoff Co.</u>, 344 U.S. 237, 243

(1952), the declaratory judgment statute "is an enabling Act, which

confers a discretion on the courts rather than an absolute right

upon the litigant,"  <u>id.</u> at 241.  <u>See also</u> <u>Green v. Mansour</u>, 474

U.S. 64, 72 (1985); <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288

(1995) ("By the Declaratory Judgment Act, Congress sought to place

a remedial arrow in the district court's quiver; it created an

opportunity, rather than a duty, to grant a new form of relief to

qualifying litigants.").  Accordingly, "declaratory relief in a

---

[2]No party contends that this case involves an antidumping or countervailing duty proceeding within the meaning of Section 2201(a).

particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."  Wycoff, 344 U.S. at 243. See also Green, 474 U.S. at 72 (noting the court's authority is bound in  "equitable considerations"); Samuels v. Mackell, 401 U.S. 66, 70-73 (1971).

In its prior decision, this court determined that there exists a "case of actual controversy" between the parties, that is within the court's jurisdiction.  The court also concluded that Customs is violating the Plaintiffs' "legal rights."  See  Canadian Lumber Trade Alliance v. United States, 30 CIT ___, 425 F. Supp. 2d 1321, 1373 (2006).  Moreover, the court found that future injury to Plaintiffs from Defendant's conduct is certain.  Id. at 1348-49; cf. Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 71 n.15 (1978) ("While the Declaratory Judgment Act does not expand our jurisdiction, it expands the scope of available remedies. Here it allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained.").

Although neither Defendant or Defendant-Intervenors consent to declaratory relief,[3] neither offers any justification for why it should not issue.  Because Plaintiffs have satisfied the

_____

[3] At oral argument, the government appeared to soften its position on this issue, though the court could not divine the government's precise intent.

requirements for declaratory relief, and defendants have failed to show good cause for why it should not issue, the court finds declaratory relief appropriate. Therefore, in conformity with the requirements of USCIT R. 57, and as requested by Plaintiffs, the court grants the Plaintiffs declaratory relief as set forth in the judgment issued concurrent with this opinion.


**(2) Injunctive Relief**

Next, Plaintiffs seek a <u>permanent</u> injunction barring future distributions. Although Defendant concedes that an injunction should issue, it questions whether Plaintiffs have satisfied parts of the test for an injunction; Defendant-Intervenors contend that an injunction should not issue. The court agrees with Plaintiffs and Defendant that an injunction should issue.

To be sure, "[a]n injunctive order is an extraordinary writ, enforceable by the power of contempt." <u>Gunn v. Univ. Comm. to End the War in Viet Nam</u>, 399 U.S. 383, 389 (1970). Because of the force behind an injunction, and because injunctive relief is an exception to the rule that "courts have no general supervising power over the proceedings and action of the various administrative departments of the government," <u>Keim v. United States</u>, 177 U.S. 290, 292 (1900), permanent injunctions do not "issue[] as of course," <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 311 (1982) (quoting <u>Harrisonville v. W. S. Dickey Clay Mfg. Co.</u>, 289 U.S. 334,

337-338 (1933)).  Rather, "the decision whether to grant or deny
injunctive relief rests within the equitable discretion of the
district courts, and [] such discretion must be exercised
consistent with traditional principles of equity . . . ."   eBay
Inc. v. MercExchange, L.L.C.,___ U.S.  ___, 126 S. Ct. 1837, 1841
(2006).

As the Supreme Court recently stated in eBay:

> According to well-established principles of equity,
> a plaintiff seeking a permanent injunction must
> satisfy a four-factor test before a court may grant
> such relief.  A plaintiff must demonstrate: (1)
> that it has suffered an irreparable injury; (2)
> that remedies available at law, such as monetary
> damages, are inadequate to compensate for that
> injury; (3) that, considering the balance of
> hardships between the plaintiff and defendant, a
> remedy in equity is warranted; and (4) that the
> public interest would not be disserved by a
> permanent injunction.  The decision to grant or
> deny permanent injunctive relief is an act of
> equitable discretion by the district court,
> reviewable on appeal for abuse of discretion.

Id. at 1839 (citations omitted).  All parties agree, as they must,
that the "four-factor test" is a balancing test.  See, e.g., Amoco
Prod. Co. v. Gambell, 480 U.S. 531, 542 & 546 n.12 (1987).
However, the parties, to some degree, dispute elements of each
factor.  The court will address each in turn.

**(i) Irreparable Harm & Lack of Alternative Remedies[4]**

---

[4]Although stated as two separate prongs by the Court in
eBay, whether something is "irreparable" requires, to a certain
(Footnote continued)

Here, by providing cash to Plaintiffs' domestic competitors, Customs alters the balance of trade preserved by the NAFTA Implementation Act and enhances the competitive position of Plaintiffs' domestic competitors, resulting in a loss of trade over time.   Canadian Lumber Trade Alliance, 30 CIT at ___, 344 F. Supp. 2d at 1345-49.   Such a harm is cognizable.  See, e.g., Parker v. Winnipiseogee Lake Cotton & Woolen Co., 67 U.S. (2 Black) 545, 551 (1863) (noting that a "recurring grievance" which causes "the loss of trade" counsels in favor of an equitable remedy).   The only question is whether the harm to Plaintiffs is more than "merely trifling." Consol. Canal Co. v. Mesa Canal Co., 177 U.S. 296, 302 (1900) (citing Parker, 67 U.S. (2 Black) at 552).

---

extent, a lack of alternative remedies.  Moreover, the eBay Court based the test on "well-established principles of equity."   Id. at 1839.  Under traditional principles of equity, "irreparable injury is not an independent requirement for obtaining a permanent injunction; it is only one basis for showing the inadequacy of a legal remedy."  11A Arthur Wright et al., Federal Practice and Procedure § 2944 (1995) (at page 94).  See also Dan B. Dobbs, Law of Remedies 50 (2d ed. 1993); Douglas Laycock, The Death of the Irreparable Injury Rule, 103 Harv. L. Rev. 687 (1990).  As Judge Friendly explained,

> A plaintiff asking [for] an injunction because of the defendant's violation of a statute is not required to show  that otherwise rigor mortis will set in forthwith; all that 'irreparable injury' means in this context is that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired.

Studebaker Corp. v. Gittlin, 360 F.2d 692, 698 (2d Cir. 1966).

In Canadian Lumber Trade Alliance, 30 CIT at ___, 425 F. Supp. 2d at 1345-49,  this court held that although the extent of Plaintiffs' injury may be disputed, there was no question Plaintiffs had sufficiently demonstrated injury to satisfy the very "generous test" for standing.  Similarly here, the court is again cautious to speculate on the extent of Plaintiffs' injury. Nonetheless, upon consideration of the testimony adduced at trial and various government reports entered into evidence, together with Customs' failure to publish notice of  an intent to comply with the court's order,  the court concludes that Plaintiffs have sufficiently shown that their injury is more than "merely trifling."  The record demonstrates that Customs has used the Byrd Amendment to provide significant support to Plaintiffs' domestic competitors in violation of section 408.  The court must conclude that, absent an order by this court, this violation will continue. Id.; cf. United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations, and, of course, it can be utilized even without a showing of past wrongs." (citing Swift & Co. v. United States, 276 U.S. 311, 326 (1928)).

The court also finds that this harm is "irreparable."  Given that the United States, and the agencies thereof, are cloaked in sovereign immunity, a party may only sue the United States for monetary damages when Congress has affirmatively waived the

government's immunity.   See, e.g.,   Lane v. Pena, 518 U.S. 187, 192 (1996);   FDIC v. Meyer, 510 U.S. 471, 475 (1994).   Here, Plaintiffs have raised their claims under the Administrative Procedure Act ("APA").   Although the APA generally waives the United States' immunity from suit, it does not permit claims for monetary damages.   See 5 U.S.C. § 702;   Lane, 518 U.S. at 196. Nor is there any other basis for Plaintiffs to seek relief. Accordingly, the harm is irreparable.   See, e.g., Ohio Oil Co. v. Conway, 279 U.S. 813, 815 (1929); Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs., 31 F.3d 1536, 1543 (10th Cir. 1994) (a state's Eleventh Amendment immunity rendered harm irreparable); Temple Univ. v. White, 941 F.2d 201, 215 (3rd Cir. 1991); Zenith Radio Corp. v. United States, 710 F.2d 806, 811 (Fed. Cir. 1983); Brendsel v. Office of Fed. Hous. Enter. Oversight, 339 F. Supp. 2d 52, 66 (D.D.C. 2004); cf. Amoco Prod. Co. v. Gambell, 480 U.S. 531, 545 (1987) (noting that a harm is irreparable when money damages cannot generally compensate for it).

Despite the apparent lack of alternative remedies, Defendant argues that the court could continue to allow Customs to make distributions which Customs then may (with unreviewable discretion according to Customs) decide to recoup from the recipients (if it so elects), pursuant to Customs' own regulation. See 19 C.F.R. §159.64(3).  This disgorgement, Customs claims, is an alternative

remedy making the harm to Plaintiffs reparable.

Defendant's argument is entirely unpersuasive.   First, to the extent Customs does recoup erroneously distributed monies, this "alternative" remedy is little different than an injunction -- Customs would be giving out money only to immediately recollect it.[5]   Indeed, the only difference between Defendant's alternative and an injunction is that an injunction will not require the administrative cost and inconvenience of Customs' proposal.

Customs correctly notes that disgorgement is an equitable remedy.  See Tull v. United States, 481 U.S. 412, 424 (1987); SEC v. Cavanagh, 445 F.3d 105, 119 (2d Cir. 2006); United States v. Philip Morris, Inc., 273 F. Supp. 2d 3, 8-9 (D.D.C. 2002).  Courts must, of course, grant legal remedies if they are available and adequate.  See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 292 (1997) (O'Connor J., concurring); see also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 509 (1959) ("in the federal courts equity has always acted only when legal remedies were inadequate").   But where, as here, there is no available

---

[5]Customs does not appear to fully recognize that the issue here regards the propriety of a permanent injunction, rather than a preliminary injunction.   The court considers a permanent injunction, after having already concluded that the Defendant has committed an unlawful act; therefore, when the distribution is made, there is no issue awaiting judicial resolution regarding the unlawfulness of the distribution.   See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, 527 U.S. 308, 314-15 (1999).   While a party certainly may appeal this court's decision, the permanent injunction inquiry operates under the assumption that the court's conclusions are correct.

legal remedy, the court has broad discretion to choose the appropriate equitable remedy.  See, e.g.,   Dan B. Dobbs, Law of Remedies 82 (2d ed. 1993).  As Defendant's alternative remedy is more burdensome than an injunction, the court does not find that disgorgement is an alternative.  See Beacon Theatres, 359 U.S. at 507 ("Inadequacy of remedy and irreparable harm are practical terms, however."); Boyce's Ex'rs v. Grundy, 28 U.S. (3 Pet.) 210, 214 (1830) ("It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.").

But even more fundamentally, Customs has not stated that it must recoup any erroneously distributed monies; rather, it claims, any recoupment will depend on its unreviewable discretion.  Just as the possibility that a defendant may voluntarily cease its illegal conduct does not moot the need for an injunction, the fact that the Defendant may later take voluntary action to "make things right" does not negate the need for an injunction either.  Cf. Allee v. Medrano, 416 U.S. 802, 811-12 (1974) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the  defendants 'would be free to return to [their] old ways.'")   (quoting Gray v. Sanders, 372 U.S. 368, 376 (1963)); Goshen Mfg. Co. v. Hubert A.

Myers Mfg. Co., 242 U.S. 202, 208 (1916) (enjoining a patent infringement was proper because "further infringement was in effect threatened and could be reasonably apprehended."). Indeed, the entire purpose of an injunction is to take away defendant's discretion not to obey the law.  Cf. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, 527 U.S. 308, 315 (1999) ("The final injunction establishes that the defendant should not have been engaging in the conduct that was enjoined." (emphasis in original)).  To wit, a cognizable alternative remedy must rest on more than the whim or discretion of a defendant.

Therefore, the court finds both that, in the absence of relief here, the Plaintiffs will suffer irreparable harm and that there are no available legal remedies for that harm.


### (ii) Balance of Hardships

Having established that the Plaintiffs will be irreparably harmed in the absence of an injunction, the court must consider the effect on other parties.  Defendant, to its credit, has acknowledged it will not be harmed by an injunction. Defendant-Intervenors, however, claim that they will be harmed because they will not get Byrd Distributions.  Given the purpose of the Byrd Amendment, i.e., to strengthen U.S. industry, Defendant-Intervenors claim that the balance of hardships tips in their favor.  The court disagrees.

In the context of a permanent injunction, because a defendant "will always suffer a hardship if he must comply with his contract when it has become expensive or if he must cease operating a factory that earns profits but also pollutes" only "hardship to the defendant [that] is not an inseparable part of the plaintiff's right" is cognizable.   Dan B. Dobbs, Law of Remedies 80 (2d ed. 1993); cf. Am. Hosp. Supply Corp. v. Hosp. Prods., Ltd., 780 F.2d 589, 596-97 (7th Cir. 1985) (Posner, J.).   Here Defendant-Intervenors' claimed injury is entirely coextensive with Plaintiffs' rights.  Accordingly, Defendant-Intervenors' claim is not separable from Plaintiffs' right.   Therefore, Defendant-Intervenors' argument must be rejected.   Because Plaintiffs have demonstrated harm to their interests, and opposing parties do not identify any cognizable harm to themselves, this factor tips in Plaintiffs' favor.

### (iii) Public Interest

Last, the court must consider whether the public interest favors an injunction.   In balancing the public interest, courts have traditionally looked to the underlying statutory purposes at issue. See, e.g., Amoco Production Co. v. Gambell, 480 U.S. 531, 544-46 (1987); TVA v. Hill, 437 U.S. 153, 194 (1978); Hecht Co. v. Bowles, 321 U.S. 321, 331 (1944).  Here, as expressed by the court in its discussion of prudential standing, section 408 of the NAFTA

Implementation Act limits the applicability of any subsequent amendment to Title VII of the Tariff Act of 1930 with respect to how those laws relate to the importation of goods from NAFTA parties (in the absence of an express statement by Congress to the contrary).    See Canadian Lumber Trade Alliance, 30 CIT at ___, 425 F. Supp. 2d at 1373.   As such, the language of section 408 indicates that Congress meant to place the interests of respecting NAFTA above the salutary purposes of future amendments to Title VII of the Tariff Act of 1930 (absent an express statement from Congress).   Any other conclusion would render section 408 nugatory.  Id.

Defendant-Intervenors correctly note that the court may consider public interest factors outside those implicated by the statutory provisions.  Defendant-Intervenors point to the need to stop dumping and subsidization as counseling in favor of denying an injunction.  This interest, however, as explained above, was resolved by Congress against the Defendant-Intervenors through its adoption of section 408.   Cf. Hill, 437 U.S. at 194 (finding that because it determined that Congress afforded endangered species "the highest priorities," the balance of interests favored injunctive relief); Hecht, 321 U.S. at 331.  Moreover, Defendant-Intervenors neglect to mention or consider other public interests at stake namely, protecting the public treasury or recognizing that certain U.S. exports to Canada face retaliatory measures

commensurate with the outlay of Byrd Distributions.  Clearly then, this argument must be rejected, and the court concludes that the public interest in the enforcement of the law weighs in favor of issuance of an injunction.

### (iv) Balancing the Prongs

As all prongs lean in the Plaintiffs' favor, the court finds injunctive relief appropriate.    In doing so, the court acknowledges that a large balance of the unlawful Byrd distributions remain to be completed.  Nonetheless, because all the other factors weigh decisively in Plaintiffs' favor, even were the court to have found that Plaintiffs failed to demonstrate substantial economic harm, nonetheless the remaining harm to Plaintiffs' rights could not be remedied without an injunction, and the balance of equities would still warrant injunctive relief here.  Therefore, the court would still find that an injunction should issue.  Accordingly, in conformity with USCIT R. 65(d), the court grants Plaintiffs injunctive relief as set forth in the judgment issued concurrent with this opinion.

### (3) Disgorgement

Last, Plaintiffs request an order directing Customs to disgorge monies that Customs has improperly disbursed in Fiscal Years 2004 and 2005.  See 19 C.F.R. § 159.64(b)(3).  If

declaratory relief is an "arrow in the court's quiver," and injunctive relief is an "extraordinary remedy," disgorgement is a landmine.  Cf.  Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 314-15, 329 (1999) (referring to a Mareva injunction as the "nuclear weapon of law").

When the government grants or distributes money to parties, those parties have some right to rely on that money they receive. Cf.  Parsons v. United States, 670 F.2d 164, 166 (Ct. Cl. 1982) ("It is well established that there is a presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations. . . ."). If there were the constant threat of disgorgement, recipients might be loath to expend money for the purpose for which it was given (fearing that they could not repay the money in the event of a court order). This, in turn, would frustrate Congressional intent in granting money.

To be sure, as demonstrated here, there are times when agencies violate congressional intent in granting money. Nevertheless, where recipients do not bring an action challenging the distribution of such money at the time the money is initially granted, public policy ordinarily requires that recipients should be allowed to expend such money without fear that it will later be

recollected until the distribution of the money is called into question.[6]  See Laskowski v. Spellings, 443 F.3d 930, 936(7th Cir. 2006); cf. EEOC v. Sears, Roebuck & Co., 650 F.2d 14, 17 (2d Cir. 1981) (discussing the principles behind the de facto officer doctrine).  In this case, the Plaintiffs filed their complaints in April 2005.   Therefore, recipients were not placed on notice until that time that the money they received could be recouped.  Consequently, the interests of equity would not be served by ordering Customs to disgorge any of the money for the period prior to the filing of the complaint.

The court further finds that equity would not be served by ordering Customs to disgorge money distributed after recipients were placed on notice of this action.   Customs correctly notes that the administrative costs of recoupment are high.  Moreover, in light of the other relief the court grants here today, and because the money already distributed represents a fraction of what is being held for distribution, the interest in recouping distributions already made does not warrant the high administrative costs of a court ordered recoupment.

Accordingly, the court denies Plaintiffs' request for an

---

[6]This applies, of course, only when the recipient's conduct is innocent.

order directing Customs to disgorge any funds already distributed.[7]


Dated:     New York, New York
           July 14, 2006



                                        /s/ Donald C. Pogue
                                            Judge

---

[7]The court does not reach the issues as to whether Customs is prohibited or allowed to seek disgorgement on its own initiative.