Slip Op. 08-77

UNITED STATES COURT OF INTERNATIONAL TRADE

SSAB NORTH AMERICAN DIVISION and
NUCOR CORPORATION,

Plaintiffs,

v.

UNITED STATES BUREAU OF CUSTOMS
and BORDER PROTECTION, W. RALPH
BASHAM, COMMISSIONER OF
CUSTOMS,

Defendants.

Before: Leo M. Gordon, Judge

Court No. 07-00057

**OPINION**

[Premature liquidation of entries by Customs declared unlawful; injunctive relief denied.]

Dated: July 14, 2008

Schagrin Associates, (Roger B. Schagrin, Brian E. McGill, Michael J. Brown), for Plaintiff SSAB North American Division.

Wiley Rein, LLP, (Alan H. Price, Maureen E. Thorson, Timothy C. Brightbill), for Plaintiff Nucor Corporation.

Gregory G. Katsas, Acting Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice (Amy M. Rubin), for Defendants.

Arent Fox Kintner Plotkin & Khan, PLLC, (John M. Gurley, Diana Dimitriuc-Quaia, Nancy A. Noonan), for Defendant-Intervenors Mittal Steel Galati, S.A. and Sidex Trading S.R.L. Galati.

Gordon, Judge: This case involves the premature liquidation of entries by U.S.

Customs and Border Protection ("Customs") during an antidumping administrative review

in violation of the statutory suspension of liquidation contained in Section 751(a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C.§ 1675(a)(2)(2000).[1] Plaintiffs seek reliquidation of the entries in accordance with the court's judgment in Mittal Steel Galati, S.A. v. United States, 31 CIT__, 491 F. Supp. 2d 1273 (2007) ("Mittal"). The Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(2) & (4) (2000). For the reasons set forth below, the court declares the liquidations unlawful, but declines to issue a mandatory injunction ordering reliquidation in accordance with the judgment in Mittal.

## I. Background

The United States Department of Commerce ("Commerce") conducted an administrative review of the antidumping duty order on cut-to-length carbon steel plate from Romania for entries made between August 1, 2003 and July 31, 2004. Certain Cut-to-Length Carbon Steel Plate from Romania, 71 Fed. Reg. 7008 (Dep't Commerce Feb. 10, 2006) (final results admin. review) ("Final Results"). Unbeknownst to Commerce and interested parties, Customs violated the statutory suspension of liquidation during the administrative review by liquidating four entries on April 22, 2005, resulting in under-collection of the applicable antidumping duties.

Commerce first learned of the incorrect liquidations shortly after the Final Results were challenged in Mittal. Customs notified Commerce of the error in response to Commerce's March 10, 2006, instructions to continue suspension of liquidation pending completion of judicial review. Commerce, in turn, asked Customs to restore the entries, but Customs refused based on a lack of statutory authorization. The court, unaware of the

---

[1] Further citations to the Tariff Act of 1930 are to the relevant provision in Title 19 of the U.S. Code, 2000 edition.

liquidated entries, issued a preliminary injunction on March 7, 2006, continuing suspension of liquidation. On May 14, 2007, the court sustained the Final Results. Mittal, 31 CIT __, 491 F. Supp. 2d 1273 (2007). Plaintiffs first learned about the incorrect liquidations on or around May 14, 2006 and commenced this action on February 14, 2007. Defendants and Defendant-Intervenors subsequently filed motions to dismiss, which the court denied. Ipsco Steel Inc. v. United States, No. 07-00057 (USCIT Nov. 20, 2007) (order denying motions to dismiss).

Together with their complaint, Plaintiffs filed a petition for a writ of mandamus. The writ of mandamus is an extraordinary remedy with three requirements: (1) defendant must owe plaintiff a clear, nondiscretionary duty; (2) plaintiff must have no adequate alternative remedies; and (3) the issuing court must be satisfied that the writ is appropriate under the circumstances. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380 (2004). Mandamus, though, is not applicable in this case because the requirement that plaintiff have no adequate, alternative remedies is not satisfied.

Plaintiffs have a remedy under § 706(2) of the Administrative Procedure Act (APA) to have the court set aside unlawful agency action, 5 U.S.C. § 706(2), and mandamus is therefore technically not available. See generally 3 Charles H. Koch, Jr., Administrative Law and Practice § 8.20[4] (2d ed. 2008) ("mandamus should be and generally has been replaced in modern administrative law by more flexible and better designed forms [of action] and remedies"). Importantly, this case does not involve the failure to perform a non-discretionary duty (agency inaction); it involves unlawful agency action—Customs' premature liquidation of subject entries. Properly framed, the relief Plaintiffs seek is not mandamus, but a declaration that Customs' action is unlawful, and a mandatory injunction

directing Customs to reliquidate the entries in accordance with the judgment in <u>Mittal</u>.  <u>See</u> <u>id.</u> at § 8.20[3].  It is to those specific remedies that the court now turns.

## II. Discussion

### A. Declaratory Relief for Customs' Violation of the Statutory Suspension of Liquidation

"[T]he United States uses a 'retrospective' assessment system under which final liability for antidumping . . . duties is determined after merchandise is imported."  19 C.F.R. § 351.212(a) (2003); <u>see</u> 19 U.S.C. § 1675(a)(2).  "While liability to pay dumping duties accrues upon entry of subject merchandise, <u>see</u> 19 C.F.R. § 141.1(a), the actual duty is not formally determined until after entry, and not paid until the [entries] are liquidated by [Customs]."  <u>Parkdale Int'l v. United States</u>, 475 F.3d 1375, 1376-77 (Fed. Cir. 2007).  "Generally, the amount of duties to be assessed is determined in a review of the order covering a discrete period of time."  19 C.F.R. § 351.212(a) (2003).

The most important element of this retrospective assessment system is the statutorily implied suspension of liquidation contained in 19 U.S.C. § 1675(a)(2) that applies to entries of subject merchandise covered by an administrative review of an antidumping duty order.  <u>See</u> <u>American Permac, Inc. v. United States</u>, 10 CIT 535, 539, 642 F. Supp. 1187, 1191 (1986) ("Because 19 U.S.C. § 1675(a)(2) expressly calls for the retrospective application of antidumping review determinations . . ., suspension of liquidation during the pendency of a periodic antidumping review is unquestionably 'required by statute.'"); <u>see also</u> <u>Ambassador Div. of Florsheim Shoe v. United States</u>, 748 F.2d 1560 (Fed. Cir. 1984) (suspension of liquidation impliedly required by statute during administrative review of countervailing duty order to effectuate retrospective system of duty

assessment); <u>Koyo Corp. v. United States</u>, 497 F.3d 1231, 1241-42 (Fed. Cir. 2007).

This suspension of liquidation enables Commerce to calculate assessment rates for the subject entries, <u>see</u> 19 U.S.C. § 1675(a)(2), which are then applied by Customs pursuant to liquidation instructions received from Commerce after publication of the final results of an administrative review. <u>See</u> 19 U.S.C. § 1675(a)(3)(B) (Customs must liquidate "promptly and, to the greatest extent practicable, within 90 days after the instructions to Customs are issued."). Under this framework Commerce performs the substantive role of determining correct assessment rates, and Customs performs a ministerial role in fulfilling Commerce's liquidation instructions. <u>Mitsubishi Elec. Am., Inc. v. United States</u>, 44 F.3d 973, 977 (Fed. Cir. 1994) ("Customs merely follows Commerce's instructions in assessing and collecting duties."); <u>Koyo Corp.</u>, 497 F.3d at 1242 ("Our holding also comports with Congress' intent to delegate to Commerce the authority to establish special duty rates, leaving Customs only the ministerial capacity to liquidate antidumping duties according to Commerce's directions as determined through the administrative and judicial review process.").

For the antidumping statutory scheme to work, Customs may not violate the suspension of liquidation contained in 19 U.S.C. § 1675(a)(2) and render Commerce's administrative review and any subsequent judicial review a meaningless exercise for subject entries, which is precisely what happened here. Accordingly, Customs' premature liquidation of entries in violation of the statutory suspension of liquidation is unlawful.

**B. Injunctive Relief to Reliquidate the Entries
in Accordance with Final Judgment in <u>Mittal</u>**

Having declared the liquidations in issue unlawful, the next question is whether the court should issue a mandatory injunction to direct Customs to reliquidate them in accordance with the judgment in <u>Mittal</u>.  <u>See</u> 3 Charles H. Koch, Jr., <u>Administrative Law and Practice</u> § 8.31[4](c) (2d ed. 2008) ("injunctive relief under the APA is controlled by principles of equity and a court is not required to set aside every unlawful agency action").  The extraordinary remedy of injunction is governed by a four factor test in which plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006) (citations omitted).  The "four-factor test" is a balancing test. <u>See, e.g.</u>, <u>Amoco Prod. Co. v. Gambell</u>, 480 U.S. 531, 542 & 546 n.12 (1987).

**(1) Irreparable Harm & Lack of Alternative Remedies[2]**

The harm Plaintiffs have suffered is apparent.  As domestic producers of cut-to-length carbon steel plate, Plaintiffs derive a direct competitive benefit from the proper

---

[2] When applying the four factor test in <u>Canadian Lumber Trade Alliance v. U.S.</u>, 30 CIT ___, ___, 441 F. Supp. 2d 1259, 1264 (2006) ("Canadian Lumber"), the court noted:

> Although stated as two separate prongs by the Court in <u>eBay</u>, whether something is "irreparable" requires, to a certain extent, a lack of alternative remedies.

<u>Id.</u> at 1264, n.4.

administration and enforcement of the antidumping laws, and more specifically, the proper assessment of antidumping duties on entries of cut-to-length carbon steel plate from Romania. Customs' liquidation of entries in contravention of the statutory suspension of liquidation has denied Plaintiffs this benefit.

Moreover, unlike importers who have the potential to protest an erroneously liquidated entry subject to an antidumping duty order, see 19 U.S.C. § 1514; Shinyei Corp. v. United States, 355 F.3d 1297 (Fed. Cir. 2004) (explaining various remedies available to importers), Plaintiffs, as domestic interested parties, do not have a comparable express statutory means of remedying Customs' premature liquidation of entries covered by the statutory suspension of liquidation. See Cemex, S.A. v. United States, 384 F.3d 1314, 1322 (Fed. Cir. 2004) (explaining that domestic interested parties to antidumping proceeding have no available remedy to rectify an erroneous Customs' liquidation of entries subject to an antidumping duty order). Plaintiffs therefore do not have an available, adequate remedy at law.

Defendant-Intervenors contend that Plaintiffs do have a remedy under 19 U.S.C. § 1501 to correct an erroneous liquidation. Section 1501 authorizes Customs to voluntarily reliquidate an entry within 90 days from the notice of the original liquidation. 19 U.S.C. § 1501. Defendant-Intervenors argue that had Plaintiffs been actively monitoring the entries by reviewing Customs' Bulletin Notices posted at ports of entry, other import information available from various governmental and commercial data resources, and by repeatedly asking Commerce to confirm the liquidation status of the subject entries during the administrative review, Plaintiffs would have learned about the liquidations in April of 2005, at which point they could have requested Customs to voluntarily reliquidate them

pursuant to § 1501, all within the statute's 90-day window.  The court is not persuaded that this proposed alternative approach constitutes an adequate remedy for Plaintiffs.

First, § 1501 simply authorizes Customs, in its discretion, to revisit a liquidation within 90 days of the notice.  It does not confer any rights on Plaintiffs and therefore does not constitute a "remedy" for Plaintiffs that would preclude injunctive relief.  See Canadian Lumber, 30 CIT at ___, 441 F. Supp. 2d at 1266  ("a cognizable alternative remedy must rest on more than the whim or discretion of a defendant").

Second, monitoring the liquidation of entries subject to an antidumping duty order is a serious challenge even for importers who have access to complete information regarding an entry.  See, e.g., Juice Farms, Inc. v. U.S., 68 F.3d 1344 (Fed. Cir. 1995) (holding Customs' violation of statutory suspension of liquidation not actionable by importer who discovered improper liquidations after protest period had expired).  Defendant-Intervenors were themselves apparently unaware that their entries had been prematurely liquidated until notified by Commerce.  Furthermore, Plaintiffs, as domestic interested parties, have access to a respondent's proprietary import information only to the extent permitted by the terms of the Administrative Protective Order (APO) governing the administrative review.  See 19 C.F.R. § 351.306 (2003) ("An authorized applicant may use business proprietary information for purposes of the segment of a proceeding in which the information was submitted."); see also 19 C.F.R. § 351.305(a) (2003); 19 U.S.C. § 1677f(c)(B).  Although Plaintiffs through their attorneys and advisors may access and use this proprietary data to comment upon Commerce's antidumping calculation for the entries, extending that use by judicial fiat to include comprehensive monitoring of all entries subject to the review is not something the court considers either wise or necessary.  Defendant-

Intervenors' proposal to impose constructive notice of the liquidation date on domestic interested parties appears on the record to be both inconsistent with APO practice and otherwise impractical.

Therefore, the court finds that in the absence of injunctive relief Plaintiffs will suffer irreparable harm and that there are no available legal remedies for that harm.

### (2) Balance of Hardships

The central hardship for Customs if an injunction issues is the administrative inconvenience associated with reliquidating entries that were liquidated three years ago in April of 2005. Customs, though, has some familiarity with such a task. In routine classification cases under 28 U.S.C. § 1581(a), Customs frequently must reliquidate entries several years after the original liquidations. For Plaintiffs, the obvious hardship if the entries are not reliquidated is the lost competitive benefit of properly collected antidumping duties, not to mention their now futile participation in the administrative and judicial review process for the affected entries. For Defendant-Intervenors, an injunction means their entries are reliquidated at correct rates, albeit more than three years after the original liquidations, which undermines the finality of those original liquidations. Although the harm to Plaintiffs in the absence of reliquidation certainly outweighs the administrative inconvenience to Customs caused by reliquidation, Defendant-Intervenors' interests in the finality of liquidation, as the next section demonstrates, stand in equipoise with Plaintiffs' interests in the proper administration of the antidumping laws. Compare Juice Farms, 68 F.3d 1344 (finality of liquidation trumps correct antidumping duty assessment rates) and Cemex, S.A., 384 F.3d at 1322 (same) with Shinyei, 355 F.3d at 1297 (finality of liquidation not a bar to correct assessment rates), and AK Steel Corp. v. U.S., 27 CIT 1382, 281 F.

Supp. 2d 1318 (2003) (finality of liquidation void in violation of injunction against liquidation); L.G. Elecs. U.S.A., Inc. v. U.S., 21 CIT 1421, 991 F. Supp. 668 (1997) (same).

### (3) Public Interest

In balancing the public interest, courts have traditionally looked to the underlying statutory purposes at issue. See, e.g., Amoco Prod. Co., 480 U.S. at 544-546; Tennessee Valley Auth. v. Hill, 437 U.S. 153, 194 (1978); Hecht Co. v. Bowles, 321 U.S. 321, 331 (1944). It goes without saying that the public interest is served by the proper administration and enforcement of the antidumping laws. As noted above, the suspension of liquidation makes possible the U.S. retrospective antidumping regime in which the actual dumping duty is calculated after entry. That regime involves a complex and time-consuming administrative proceeding, and an equally involved judicial review process. In this case Customs' violation of the statutory suspension of liquidation entirely undermined the administrative and judicial review process for the affected entries and also squandered the productive efforts of interested parties, Commerce, and the Court.

With that said, there is another important statutory purpose in play. It involves the principle of finality for the liquidation of entries codified in 19 U.S.C. § 1514 (Supp. III 2003). As noted above, Plaintiffs may not avail themselves of the protest procedures of § 1514, Cemex, 384 F.3d at 1325, but the statute's principle of finality is nevertheless an important factor that the court must consider in determining whether reliquidation is an appropriate remedy. Id. As Cemex notes:

> While we recognize that section 1514(c)(2) does not grant protest rights to domestic producers, we find no statutory basis for concluding that, in the absence of express remedies under the statute, [domestic interested parties have] greater rights than those persons authorized by statute to file protests or that [domestic interested parties have] more time to do so than the 90 days allotted.

Id.

When applying the time periods of § 1514 by analogy to domestic interested parties, as Cemex suggests, the key trigger is not necessarily the notice of liquidation. Charging domestic interested parties with constructive notice of that date is inappropriate given APO restrictions on the use of proprietary import information. The better measure is instead when Plaintiffs actually knew, or should have known, about the liquidations. In this case that date is on or around May 14, 2006, when Plaintiffs were notified by Commerce. Unfortunately, Plaintiffs commenced this action eight months later, well beyond the 90-day period of § 1514.[3]

Whatever the reason for the eight month lapse, it could not have been an expectation that Customs would correct its own mistake. As the time period for voluntary reliquidation had passed, there was no statutory authorization for Customs to reliquidate the entries. See F. Vitelli & Sons v. United States, 250 U.S. 355, 358 (1919) ("the remedy intended to be accomplished by [a prior provision similar to § 1514] was to prevent the right to reliquidate, which had previously been exerted without limit, from being exercised except in the particular conditions stated, and thus in the interest of the citizen to circumscribe the power to the instances specified in order that uncertainty as to the finality of customs

---

[3] The statute currently allots 180 days to file a protest, 19 U.S.C.A. § 1514 (West 2008); Plaintiffs' entries were made under a prior version of the statute that allots 90 days. 19 U.S.C. § 1514 (Supp. III 2003).

entries might be removed and the security of commercial transactions be safeguarded"). The only way Customs could fix the problem was therefore pursuant to a court ordered injunction.

### (4) Balancing of Factors

And so the court has competing interests to weigh: the proper assessment and collection of antidumping duties vs. the finality of liquidation. Under the circumstances the court believes that an injunction should not issue because Plaintiffs commenced their action well beyond the time period specified in § 1514. That well-known benchmark is a useful guide for both the court and parties to help resolve the otherwise thorny question of when equity may appropriately intervene to disturb liquidation.

Juice Farms also lends support to this outcome. In Juice Farms Customs prematurely liquidated entries subject to an antidumping duty order in violation of the statutory suspension of liquidation, but the court refused to entertain reliquidation of the entries because plaintiff, an importer of orange juice subject to an antidumping duty order, had failed to protest the liquidations within the time limits prescribed by § 1514. Juice Farms, 68 F.3d at 1346. The plaintiff in Juice Farms would undoubtedly be disappointed to learn that the court ordered reliquidation here, where Plaintiffs waited eight months to commence their action, 22 months after the affected entries were liquidated. Such a result would be, in a word, inequitable.

### III. Conclusion

Customs' premature liquidation of entries in violation of the statutory suspension of liquidation is unlawful, and the court grants Plaintiffs declaratory relief.  Nevertheless, the court concludes that under the circumstances presented an injunction should not issue. The court will enter judgment accordingly.


                                                        /s/ Leo M. Gordon
                                                        Judge Leo M. Gordon


Dated:     July 14, 2008
           New York, New York